**UNITED STATES of America ex rel.
Robert HOLLEMAN, Petitioner,**

v.

**Jack DUCKWORTH, et al., Respondents.**

No. 82 C 5666.

United States District Court,
N.D. Illinois, E.D.

July 31, 1984.

Ronald Wilder, Brian Hamer, Schiff Hardin & Waite, Chicago, Ill., for petitioner.

James E. Fitzgerald, Asst. Atty. Gen., Chicago, Ill., for respondent Lane.

### MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This habeas corpus petition is before the court on petitioner's motion for summary judgment. For the reasons stated below, the court grants petitioner's motion.

### I.

In October 1976, petitioner Robert Holleman participated in the murders of Scott Moore and Robin Opfer. Moore was murdered in the Chicago apartment he shared with Opfer, but Opfer was transported to Indiana before she was murdered. Holleman subsequently was convicted in Indiana of murdering Opfer, and in the Circuit Court of Cook County, Illinois of murdering Moore. Holleman already was incarcerated in Indiana when proceedings began in Illinois, and Illinois secured temporary custody of Holleman, for purposes of trying him, under Article IV of the Interstate Agreement on Detainers ("IAD"), which in Illinois is codified at ch. 38, § 1003-8-9. In his habeas corpus petition to this court, Holleman challenges his Illinois conviction based on various delays which occurred at different stages in the process of his return to Illinois for trial. Holleman's present motion for summary judgment is based solely on delays occurring between his arrival in Illinois and his trial, and the court will address only that time period.

Holleman arrived in Illinois on March 28, 1978. (Stipulation, tr. p. 5.) Article IV of the IAD required Illinois to bring Holleman to trial within 120 days after his arrival in Illinois, excluding certain continuances:

In respect of any proceeding made possible by this Article, trial shall be com-

menced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction in the matter may grant any necessary or reasonable continuance.

Art. IV(c).[1] As discussed below, Holleman was not brought to trial within the 120-day period specified in Art. IV(c). The trial court therefore was required to impose the IAD's mandatory sanction of dismissal with prejudice:

> [I]n the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in ... Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Art. V(c). The trial court did not dismiss Holleman's indictment with prejudice; instead, it tried and convicted him. This violation of Art. IV(c), and the failure to dismiss Holleman's indictment under Art. V(c), underlie one of Holleman's claims, and it is on the basis of this claim that he moves for summary judgment.

## II.

On this motion respondent[2] appears to concede that the 120-day limitation of Art. IV(c) was violated.[3] Despite respondent's concession, the court will discuss this issue briefly. Insofar as is relevant to determining whether the 120-day limitation was exceeded, the record before the court consists primarily of the Memorandum of Orders, or "half-sheet," kept in the Circuit Court of Cook County, supplemented only by certain oral stipulations entered into before the trial judge when Holleman's post-trial motions were argued. The half-sheet entries are very brief. Each entry lists the date of the order and the judge's name, and almost all the entries also carry the notation "PP," which apparently means "Parties Present." Many entries also give Holleman's name in parentheses. Almost all the entries then state "B/A" (By Agreement), "O/C" (Order of Court), or "M/S" (Motion of State), followed by the date to which the case is continued; the new date is marked with a "w" or "x," which the court understands to relate to subpoenas. Only a handful of entries carry any other notations. Two entries carry the notation "DDT," which the court understands to mean "Defendant Demands Trial," but the State stipulated that Holleman demanded trial on several more dates as well. (Tr. pp. 57–58.)[4] Nothing in any entry reflects any determination that good cause had been shown for a continuance.

Attached hereto as Appendix A is a table analyzing the time which passed between Holleman's arrival in Illinois on March 28,

---

1. Had Holleman requested final disposition of the charges outstanding against him in Illinois, on the basis of which a detainer had been lodged, then Art. III of the IAD would have governed, and Illinois would have been required to bring him to trial within 180 days of his request. Art. III(a).

2. As used herein, "respondent" refers to Michael Lane, Director of the Illinois Department of Corrections, who is Holleman's Illinois custodian. Also named as a respondent is Jack Duckworth, Holleman's Indiana Custodian. Duckworth has not taken an active part in opposing Holleman's petition.

3. Respondent does state that "it was the Court, and not the government, which necessitated the delays which violated the 120 day provision of Art. IV(c)." (Respondent's memo filed 6/4/84, p. 2.) The court does not believe that this assertion is material to any issue before the court, and respondent has not articulated how it might be material.

4. Despite the State's stipulation that Holleman demanded trial on the dates of two court-ordered continuances (Tr. pp. 57–58), respondent asserts that Holleman failed to object to those continuances. (Respondent's memo filed 6/4/84, p. 2.) There is more than one flaw in respondent's argument, but it should suffice to note that respondent has pointed to no basis in the record for his assertion that Holleman failed to object. As far as the court can tell, the only relevant evidence of record is the stipulation that Holleman demanded trial on the dates in question.

1978, and his trial, which took place on November 6, 1978, 223 days later. Under Art. IV(c), continuances ordered "for good cause shown in open court, the prisoner or his counsel being present" are excluded from the 120-day period.[5] The parties have assumed all along that any continuance requested or agreed to by Holleman should be excluded from the 120-day period, and the court will not disturb that assumption. Excluding continuances which Holleman requested or agreed to, Holleman was tried on the 128th day after his arrival in Illinois.

Of course, continuances not requested or agreed to by Holleman also can be excluded, if they were ordered "for good cause shown in open court, the prisoner or his counsel being present." To resist Holleman's motion, respondent must raise a genuine issue of fact suggesting that eight or more days of continuance were granted in accordance with this standard, but respondent has not done this. The court will assume that Holleman or his counsel was present when all continuances were granted, because of the "PP" notations, and because of the stipulation that Holleman demanded trial on April 21 and on all dates starting with July 27. (Tr. pp. 57–58.) Holleman's presence, or that of his attorney, satisfies only part of the standard, however, and there is not a shred of evidence in the record suggesting that any continuance was ordered upon a showing of good cause.

■ On respondent's motion for summary judgment, which the court denied on December 2, 1983, respondent focused on two court-ordered continuances, exclusion of either of which would have brought the unexcluded delay down to within the 120-day limitation. Respondent offered no direct evidence of the circumstances surrounding those continuances, but instead relied solely on a presumption of regularity. The court declined to indulge the suggested presumption of regularity, in part because there was no evidence in the record indicating what the regular procedures were for granting continuances in the Circuit Court of Cook County. *Cf. Stroble v. Anderson,* 587 F.2d 830, 839 (6th Cir.1978), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) (informal procedures usually followed in trial court did not ensure compliance with Art. IV(c) in IAD cases). The court gave the parties leave to proceed with discovery. (Memorandum Opinion and Order of December 2, 1983.) On this motion respondent has not adduced any additional evidence. Holleman has demonstrated, beyond any genuine issue of material fact, that no continuance was accompanied by a finding of good cause, and that 128 days of continuance, none accompanied by a finding of good cause, were not requested or agreed to by him. Arguably, in the absence of a finding of good cause, this court could make an independent determination that good cause for a continuance had been shown (or existed). There is no evidence in the record, however, which would allow the court to make such an independent determination. It should be noted that "good cause" often has been construed strictly. In one case a district judge's crowded trial calendar was held not to constitute good cause in the absence of any attempt to reassign the IAD case to another judge who could try the case within the applicable 120-day limit. *United States v. Ford,* 550 F.2d 732, 743 (2d Cir.1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). By summary judgment standards the court must find, as respondent apparently concedes, that the 120-day limitation of Art. IV(c) was violated. The trial court therefore was required to dismiss Holleman's indictment with prejudice under Art. V(c), which it did not do.

### III.

■ Holleman has established, by summary judgment standards, that his trial and conviction were in violation of Art. IV(c) of the IAD, but whether that violation will support the collateral relief he

---

**5.** Also excludable are delays resulting from a prisoner's inability to stand trial. Art. VI(a).

There is no suggestion that Holleman was unable to stand trial at any relevant time.

seeks is a more difficult question. Certain basic points are not in dispute. Holleman is in custody, as he is incarcerated in Indiana, serving his Illinois sentence concurrently with his Indiana sentence and with an unrelated federal sentence. (Tr. pp. 59–61.)[6] Although Holleman is incarcerated in Indiana, this district is an appropriate forum for his challenge to the lawfulness of his custody, insofar as he is in custody pursuant to his Illinois conviction. *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Orito v. Powers,* 479 F.2d 435, 437–38 (7th Cir.1973). Respondent concedes that Holleman has no unexhausted state remedies available to him, for purposes of 28 U.S.C. § 2254(b) and (c). (Respondent's motion for summary judgment filed 4/11/83, ¶ 2.)

It is well settled that the IAD is a law of the United States for purposes of 28 U.S.C. § 2241(c)(3) and 2254(a), which authorize issuance of writs of habeas corpus when a prisoner is in custody in violation of the laws of the United States. *Esposito v. Mintz,* 726 F.2d 371, 372–73 (7th Cir.1984); *Neville v. Cavanagh,* 611 F.2d 673, 675 n. 4 (7th Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980); *Echevarria v. Bell,* 579 F.2d 1022, 1024–25 (7th Cir.1978); *United States v. Ricketson,* 498 F.2d 367, 372 (7th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974). *See also Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) (IAD a law of the United States for

purposes of 42 U.S.C. § 1983). It also is well settled, however, that not every violation of a law of the United States will support collateral relief. *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). *Davis* stated that errors of law will support collateral relief only if accompanied by some prejudice to the defendant, or if they are of a fundamental nature amounting to a miscarriage of justice, or if they present exceptional circumstances.[7] The courts of appeals are divided, probably into more than two camps, on the question of how *Davis* should be applied to IAD violations, and the Court of Appeals for the Ninth Circuit obviously suffers from internal division. The Court of Appeals for this Circuit has never addressed the question of how *Davis* applies to IAD violations. The facts of this case, as they appear by summary judgment standards, do not require the court to choose among the competing lines of cases, but it is necessary to discuss the different approaches taken by different courts.

Most favorable to Holleman's case is the position taken by the Third Circuit in *United States v. Williams,* 615 F.2d 585, 589–90 (3d Cir.1980), which involved an anti-shuttling claim.[8] In applying *Davis* the Court considered the IAD's mandatory sanction of dismissal with prejudice to be dispositive:

[T]he defense to the indictment is absolute under the Act when the Government violates Article IV. Under such circum-

---

**6.** Holleman's convictions were affirmed in *United States v. Holleman,* 575 F.2d 139 (7th Cir. 1978); *Holleman v. State,* 272 Ind. 534, 400 N.E.2d 123 (1980); and *People v. Holleman,* 82 Ill.App.3d 409, 37 Ill.Dec. 782, 402 N.E.2d 784 (1st Dist.1980). He properly has made separate collateral attacks on his convictions. *See* Rule 2(d), Rules Governing Section 2254 Proceedings. The Court of Appeals has affirmed the denial of his collateral attacks on his other two convictions. *Holleman v. United States,* 721 F.2d 1136 (7th Cir.1983); *Holleman v. Duckworth,* 700 F.2d 391 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983).

**7.** *Davis* arose on a motion to vacate a federal conviction and sentence under 28 U.S.C. § 2255. Although § 2255 is a statutory procedure distinct from habeas corpus, the Supreme Court

has endeavored to construe it as being coextensive with habeas corpus. *E.g., United States v. Hayman,* 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L.Ed. 232 (1952). *Davis* is considered an authoritative determination of the scope of habeas corpus, and it is applied fully to petitions under § 2254 which assert claims under the laws of the United States. *E.g., Hussong v. Warden, Wisconsin State Reformatory,* 623 F.2d 1185, 1190 & n. 12 (7th Cir.1980).

**8.** The IAD prescribes dismissal with prejudice as the sanction for three types of violations—violation of a speedy trial provision, Art. III(a) and Art. IV(c); violation of an anti-shuttling provision (by returning a transferred prisoner to his original place of confinement without bringing him to trial), Art. III(d) and Art. IV(e); and failure to accept custody of a prisoner, Art. V(c).

stances, we fail to see how an alleged IADA violation would not be the type of "fundamental defect" cognizable in section 2255 proceedings. Although an IADA violation may have little if no [sic] bearing on the prisoner's guilt or innocence, nonetheless Congress chose to make the defense absolute when the Government violates the Act and we hold that it is precisely the "exceptional circumstances" making section 2255 relief appropriate.

*Id.* at 590 (footnote omitted). Similar reasoning apparently was employed in *Brown v. Wolff,* 706 F.2d 902, 906 (9th Cir.1983) (speedy trial), and *Cody v. Morris,* 623 F.2d 101, 102–03 (9th Cir.1980) (speedy trial).

■ The court believes that the reasoning of *Williams* has much to commend it. Of course, the sanction to be imposed in the trial court or on direct review does not always govern on collateral review; if it did, all reversible error would support collateral relief. There are persuasive reasons, however, why the IAD's prescribed sanction of dismissal with prejudice should be considered dispositive, or at least should be given great weight, in determining the availability of collateral relief. These reasons generally are related to the fact that the IAD's prescribed sanction is quite extreme. It is difficult to think of another provision of federal law which imposes a mandatory sanction of dismissal with prejudice. Violations of the time limits of the federal Speedy Trial Act, for instance, require the court to dismiss the indictment or information, but the court may dismiss with or without prejudice, depending on its appraisal of the circumstances. 18 U.S.C. § 3162(a).[9]

■ On the simplest level, the IAD's extreme sanction is important to a *Davis* analysis because it sets IAD violations off procedurally from virtually all other types of violations. *Davis* and *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), which must be considered together with *Davis,* were concerned largely with the problem that 28 U.S.C. § 2255, which authorizes collateral relief from federal sentences, might appear to allow collateral relief based on any trial error, since every ruling in a federal prosecution is based on the laws of the United States. As the Court of Appeals for the Second Circuit has explained:

[S]ince a literal reading would lead to the absurd conclusion that any non-harmless error in a federal criminal trial would provide grounds for collateral attack, the Supreme Court has provided a gloss [on] § 2255.

*Edwards v. United States,* 564 F.2d 652, 654 (2d Cir.1977). *Davis* and *Hill* contemplated the vast array of reversible error which might be committed in a federal prosecution, and they suggested criteria be used in distinguishing between those errors meriting collateral relief and those errors not meriting collateral relief. Because of the IAD's prescribed sanction, IAD violations are not part of that vast array which *Davis* and *Hill* sought to divide and distinguish. On direct appeal the remedy for an IAD violation is not reversal and remand for a new trial; instead, it is reversal without the possibility of retrial. In this respect, the IAD's prescribed sanction places IAD violations largely outside the scope of the problem *Davis* and *Hill* addressed. Procedurally, IAD violations are "exceptional."

■ The IAD's mandatory sanction of dismissal with prejudice also carries a substantive importance for a *Davis* analysis. It is useful to consider another line of cases applying *Davis* to IAD violations. In *Bush v. Muncy,* 659 F.2d 402 (4th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 449 (1982), which involved an anti-

---

9. One possible analogy is to defenses based on statutes of limitation, since such defenses, if upheld, bar prosecution entirely. The court has found a handful of cases considering collateral relief based on limitations defenses, but for various reasons these cases are of no help here. *E.g., United States v. Akmakjian,* 647 F.2d 12 (9th Cir.1981) (§ 2255 relief denied; waiver of limitations defense); *Askins v. United States,* 251 F.2d 909 (D.C.Cir.1958) (§ 2255 relief proper for limitations defense; extreme facts).

shuttling violation, the Court focused on the nature of the particular statutory guarantee in question, explicitly rejecting *Williams* and placing no weight on the accompanying statutory sanction. The Court held that an anti-shuttling violation will not support habeas corpus relief, because the anti-shuttling provisions are "non-traditional statutory guarantees ... that are peripheral to the historic central concerns with fundamental fairness in the prosecutorial and adjudicative processes leading to criminal conviction and confinement." *Id.* at 409. Similar reasoning is found in *Carlson v. Hong*, 707 F.2d 367 (9th Cir.1983) (anti-shuttling); *Hitchcock v. United States*, 580 F.2d 964 (9th Cir.1978) (anti-shuttling). As an initial matter it should be noted that *Bush* expressly reserved judgment as to whether violation of the IAD's speedy trial provisions would support collateral relief, since those provisions appear to protect rights different from those protected (or conferred) by the anti-shuttling provisions. 659 F.2d at 408 & n. 4. *Carlson*, in order to reconcile Ninth Circuit precedents, went further and stated that collateral relief is available for violations of the IAD's speedy trial provisions, because those provisions are grounded in the Sixth Amendment right to a speedy trial. 707 F.2d at 368. *See also Tinghitella v. California*, 718 F.2d 308, 310–11 (9th Cir.1983). Along these lines Holleman cites *Krilich v. United States*, 502 F.2d 680 (7th Cir.1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1429, 43 L.Ed.2d 673 (1975), wherein the Court stated:

> Non-compliance with a statute which has as one of its purposes the effectuation of a constitutional right presents an issue of sufficient constitutional dimension to warrant consideration under 28 U.S.C. § 2255.

*Id.* at 682 (footnote citing *Davis* omitted). *Krilich* involved the Jencks Act, 18 U.S.C. § 3500, which the Court described as "a vehicle for effectuating and enhancing the defendant's constitutional right of confrontation." 502 F.2d at 683 n. 3. The IAD's speedy trial provisions similarly give effect to and enhance the Sixth Amendment speedy trial guarantee, which, the Supreme Court has held, extends to defendants incarcerated on other charges. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

Emphasizing the nature of the particular right involved, and searching for historical or constitutional associations, tends to support the conclusion that a violation of Art. IV(c) is a fundamental error, justifying collateral relief. The court believes, however, that it is a mistake to attempt to appraise a statutory guarantee only from a historical or constitutional perspective, without giving any weight to the statutory sanction accompanying that guarantee. In *Bush* the anti-shuttling provisions are subjected to a *Davis* analysis stripped of the legislative judgment implicit in the selection of an unusually strong sanction. *Bush* looks solely at the nature of the statutory right in question, and, since it is "non-traditional," considers whether it is close to "the historic central concerns with fundamental fairness in the prosecutorial and adjudicative processes leading to criminal conviction and confinement." 659 F.2d at 409. It cannot be denied that this perspective is important to a *Davis* analysis, and indeed the Court of Appeals for this Circuit, in holding collateral relief unavailable under *Davis*, has relied on the fact that a statutory exclusionary rule was unrelated to the essential question of guilt or innocence. *Hussong v. Warden, Wisconsin State Reformatory*, 623 F.2d 1185, 1191 (7th Cir.1980). This should not mean, however, that other factors should not be considered when present. Nothing in *Davis*, or in the problem addressed in *Davis*, or in the Seventh Circuit's application of *Davis* in *Hussong*, calls for ignoring the exceptional circumstance that legislative judgment has selected an extreme mandatory sanction of dismissal with prejudice; rather, generous reliance on this important datum seems to be dictated by *Davis'* general purpose of separating the

wheat from the chaff in determining the availability of collateral relief.

■ It may be tempting to consider the IAD as only marginally a law of the United States, and therefore as not really reflecting federal policy, but the court believes that such a view has been foreclosed by the Supreme Court. In *Cuyler v. Adams,* over Justice Rehnquist's persuasive dissent, the Court held that the IAD is a law of the United States, conferring rights protectible under 42 U.S.C. § 1983. 449 U.S. at 450, 101 S.Ct. at 713. It also may be tempting to consider the IAD's seemingly disproportionate sanction as a quirk of some kind, not really embodying any particular legislative judgment. This too would be wrong. The IAD addresses very serious problems which prevailed under the previous informal and varying state practices with respect to detainers. Not only did the former detainer practices result in serious infringement of prisoners' rights, but they also substantially impeded prison officials' ability to use the period of incarceration to rehabilitate prisoners. The Supreme Court has described the harms that the IAD was intended to prevent or minimize: *United States v. Mauro,* 436 U.S. 340, 349–50, 353, 355 n. 23, 358 n. 25, 359–60, 98 S.Ct. 1834, 1841–42, 1843, 1845 n. 23, 1846 n. 25, 1846–47, 56 L.Ed.2d 329 (1978). When a statutory right is created, the statutory scheme for protecting that right, including the sanction to be imposed for violation, is an important indication of the weight that right is to carry. The IAD's selection of an extreme sanction should not be ignored in a *Davis* analysis. The court considers this factor, and accords it great weight.

■ Further, even from a historical perspective the IAD's prescribed sanction should be given some weight. Because dismissal without prejudice absolutely bars trial, it partakes somewhat of a jurisdictional character. *Cf. Neville v. Cavanagh,* cited above, 611 F.2d at 679 & n. 7 (Cudahy, J., dissenting: "It is fairly arguable

at least that the facially categorical requirements of Article IV(e) of the Detainers Act are 'jurisdictional.' "). It seems to be agreed that IAD violations are not jurisdictional, in the sense that defendants may waive their IAD defenses. *E.g., United States v. Johnson,* 713 F.2d 633, 653 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); *United States v. Odom,* 674 F.2d 228, 230 (4th Cir.) *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982); *United States v. Palmer,* 574 F.2d 164, 167 (3d Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978). Assuming that IAD violations do not truly amount to jurisdictional defects, they still resemble jurisdictional defects, because they go not to the question of how a defendant should be tried, but instead to the question of whether the defendant should be tried at all. The IAD's prescribed sanction of dismissal with prejudice therefore is evocative of a category of error historically subject to correction by writ of habeas corpus. *E.g., Bowen v. Johnston,* 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939).

A third class of cases seems to focus less on the particular right involved and more on the particular facts of a given case. These opinions indicate, more or less clearly, that an IAD violation may support collateral relief, but only if additional factors are present. These cases do not make a point of distinguishing between the IAD's speedy trial provisions and its anti-shuttling provisions. *Mars v. United States,* 615 F.2d 704 (6th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 138, 66 L.Ed.2d 60 (1980) (speedy trial and anti-shuttling); *Fasano v. Hall,* 615 F.2d 555 (1st Cir.), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 86 (1980) (speedy trial and anti-shuttling); *Huff v. United States,* 599 F.2d 860 (8th Cir.), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979) (anti-shuttling); *Edwards v. United States,* 564 F.2d 652 (2d Cir.1977) (anti-shuttling).[10]

10. Respondent has cited *Foran v. Metz,* 463 F.Supp. 1088 (S.D.N.Y.), *aff'd,* 603 F.2d 212 (2d Cir.1979). That case apparently reads *Edwards*

as holding that an IAD violation can never support collateral relief, but the court does state that an IAD violation should be considered in

The most obvious type of additional factor would be some actual prejudice to the prisoner. *E.g., Shigemura v. United States,* 726 F.2d 380, 381 (8th Cir.1984). *Davis* itself refers to prejudice as a relevant factor. 417 U.S. at 346, 94 S.Ct. at 2305. While Holleman may or may not have suffered actual prejudice from the Illinois authorities' delay, including the delay that violated Art. IV(c) of the IAD, he has not demonstrated prejudice by summary judgment standards, so the court must assume, on the present motion, that he suffered no actual prejudice.

Apart from prejudice, two other types of additional factors have some relevance in Holleman's case. In *Fasano* it was suggested that an "egregious" violation might support collateral relief. 615 F.2d at 558. By summary judgment standards Holleman has demonstrated only an eight-day violation of Art. IV(c), so in one sense the violation is not egregious. In another sense, however, the record does disclose an egregious violation. The record shows clearly that no finding of good cause ever was made in connection with any continuance ordered in Holleman's case. The record discloses no procedure at all for ensuring compliance with the applicable IAD speedy trial provision.[11] This is not a case in which a federal court is asked to second-guess a finding of good cause—in which case § 2254(d) would be an almost insurmountable obstacle—or even a case in which the trial court failed on one or two occasions to enter a finding of good cause, while generally adhering to the requirements of the IAD. The requirements of the IAD simply were not observed at all, until there already had been a violation; and then, the violation was not remedied.

The *Mars* case suggested a third type of additional factor which might justify collateral relief. The Court stated that

collateral relief might be available "where petitioner can show ... that his IAD rights properly asserted before the trial court were not properly vindicated." 615 F.2d at 707 n. 9. Of course, the distinction between direct review and collateral review would be erased if collateral review were available any time a claim was rejected on direct review. On the other hand, the distinction falls by itself when a claim is presented in the trial court and on direct review and simply is ignored. In such a case the absence of any meaningful direct review would constitute an "exceptional circumstance" justifying full collateral relief under *Davis. Cf. Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (availability of collateral review of Fourth Amendment claim turns on whether state court afforded full and fair opportunity for a hearing).

In its memorandum opinion and order of December 2, 1983, the court rejected respondent's contention that Holleman had waived his claim under Art. IV(c) by failing to present it to the state courts. The court's ruling was based on this passage from *Mauro:*

> The record shows that from the time he was arrested Ford persistently requested that he be given a speedy trial. After his trial date had been continued for the third time, he sought the dismissal of his indictment on the ground that the delay in bringing him to trial while the detainer remained lodged against him was causing him to be denied certain privileges at the state prison. We deem these activities on Ford's part sufficient to put the Government and the District Court on notice of the substance of his claim.

436 U.S. at 364–65, 98 S.Ct. at 1849. In *Mauro,* Ford apparently did not even cite

---

determining whether there has been a violation of the Sixth Amendment speedy trial right. *Id.* at 1096.

**11.** It may have been believed that compliance with the Illinois Speedy Trial Act, ch. 38, ¶ 103–5, would ensure compliance with Art.

IV(c), even though the Act operates on slightly different principles and generally does not require a finding of good cause for a continuance. This belief, if indeed it was held, was seriously wrong, at least as applied to Holleman's case. *See* nn. 12 and 13 below.

the IAD, and he was held not to have waived his IAD claim. As held by the court on December 2, 1983, Holleman met the standard set in *Maruo*. Moreover, while Holleman did not present the state courts with the precise Art. IV(c) argument he makes to this court, he went far beyond what is required by *Mauro* to avoid waiver. Holleman gave the state courts such abundant notice of the claim considered on this motion that their failure to recognize it and rule upon it may be considered an exceptional circumstance.

Holleman's two arguments on direct appeal were raised, along with additional arguments, in the trial court. First, Holleman argued that more that 120 days of delay not attributable to him had accumulated since his arrival in Illinois, in violation of the Illinois Speedy Trial Act, ch. 38, ¶ 103–5(a). The State and the Illinois courts agreed that more than 120 days had accumulated; Holleman's argument was rejected only because it was held that the accumulation of more than 120 days did not violate the Act.[12] Second, Holleman argued that the 120-day speedy trial provision of Art. IV(c) had been violated. Holleman did not argue, however, that the accumulation of more than 120 days of delay constituted a violation of Art. IV(c). Instead, he argued that Illinois authorities circumvented the 120-day limitation, and therefore should be held to have violated it, by their delay in accepting custody after it was offered by Indiana authorities. Thus, Holleman argued extensively, and it was conceded on all sides, that more than 120 days of delay had accumulated; at the same time, he argued that there had been a violation of Art. IV(c), which required that he be brought to trial within 120 days. Holleman simply (and inexplicably) failed to combine these two arguments into the one he makes before this court, and neither the State nor the trial court nor the appellate court combined the two arguments for him.[13]

Attached hereto as Appendix B is a compilation of quotations from papers and argument before the trial court, from papers before the appellate court, and from the opinion of the appellate court, referring to the accumulation of 120 days of delay or to the 120-day limit of Art. IV(c). They are taken out of context, but even with this in mind they demonstrate that the Illinois courts were given elaborate notice that Holleman had a valid IAD claim which required dismissal of his indictment with prejudice. It may be understandable that the trial court failed to perceive that Holleman had a valid claim, because the trial judge heard arguments filled with dates and time computations and then immediately ruled from the bench. It is less understandable how the appellate court could

---

**12.** Before a 1975 amendment, the speedy trial computation started anew after any continuance occasioned by the defendant; delay not occasioned by the defendant was not accumulated. *E.g.*, *People v. Donalson*, 64 Ill.2d 536, 540, 1 Ill.Dec. 494, 495, 356 N.E.2d 776, 777 (1976). The 1975 amendment, which eventually became effective only as to crimes committed after March 1, 1977, required that delay not occasioned by the defendant be accumulated. ch. 38, ¶ 103–5(f). Although Holleman's crime occurred in 1976, he argued vigorously that he was entitled to the benefit of the 1975 amendment. The State and the Illinois courts conceded that more than 120 days of delay not occasioned by Holleman had accumulated, but the courts held that Holleman was not permitted to accumulate delay, and only 102 days had passed from the last continuance occasioned by Holleman to his trial.

**13.** The court's best guess is that Holleman's trial and appellate counsel mistakenly assumed that rejection of his argument under the Illinois Speedy Trial Act also was determinative of how delay would be computed under Art. IV(c) of the IAD. The trial judge may have made the same assumption. When rejecting Holleman's contention that delay before his arrival in Illinois could be counted under Art. IV(c), the trial judge noted: "I already have ruled on any delays from the time that he came here." (Tr. p. 38.) The only such ruling had been under the Illinois Speedy Trial Act, not under the IAD. This apparent assumption is barely understandable, since the nature of the dispute under the Illinois Speedy Trial Act underscored the fact that there is more than one way of computing delay under a speedy trial provision. Before this court it is not disputed that delay is accumulated under the IAD.

have failed to notice the IAD violation. All that is necessary to establish the violation of Art. IV(c)—both the conceded facts and the applicable provision of law—appear plainly, not only from the record before the appellate court, but also from the written opinion of the appellate court itself. It certainly was well within the power of the appellate court to address the argument Holleman makes to this court, even though it is slightly different from that he made to the Illinois courts. *Hux v. Raben*, 38 Ill.2d 223, 225, 230 N.E.2d 831, 832 (1967); *see also Silber v. United States*, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962). Under the circumstances, the court believes that a certain fundamental fairness would be lacking if this court too failed to vindicate Holleman's federal rights. A defendant's rights should not be forfeited forever by his counsel's failure to formulate a clearly meritorious argument in precisely the right way, when there is but a "very fine shade of difference between the grounds asserted." *People v. Hawkins*, 34 Ill.App.3d 566, 569, 340 N.E.2d 223, 225 (1st Dist.1975).

As discussed above, these factors support the conclusion that Holleman is entitled to relief under *Davis:* the IAD's mandatory sanction of dismissal with prejudice, which should have been applied in Holleman's case but was not; the traditional concern with speedy trial rights, evidenced by the Sixth Amendment speedy trial guarantee, which informs the speedy trial provision of Art. IV(c) of the IAD; the absence, reflected in the record, of any procedures for ensuring compliance with the IAD's speedy trial provisions, and of any effort to comply with the applicable provisions; and the failure of the Illinois courts to recognize and rule upon Holleman's claim, given the abundant—if imperfect—notice of his claim which they were given.

■■■■ Weighing against the availability of collateral relief is the irrelevance of Holleman's claim to the question of his guilt or innocence. On this motion, at least, Holleman has not challenged the integrity of his trial—a bench trial on a stipulated record—or suggested that he did not participate in the murder of Scott Moore. A claim not going to guilt or innocence is less likely to support collateral relief under *Davis. E.g., Hussong,* cited above, 623 F.2d at 1191. Again, however, the IAD's mandatory sanction of dismissal with prejudice distinguishes IAD violations. Most claims not going to guilt or innocence relate to rules affecting the course of trial, for instance by excluding certain evidence. Such rules may result in acquittal of the guilty in some cases, but this is not their necessary effect; they are not rules which bar trial absolutely. The IAD does bar trials absolutely. Holleman should not have been tried at all. Under these circumstances, the irrelevance of his claim to his guilt or innocence weighs less heavily against collateral relief than it would if he merely were challenging the admission of certain evidence at his trial. Upon consideration of all the factors discussed above, the court concludes that Holleman is entitled to collateral relief.

## IV.

Accordingly, the court grants petitioner Holleman's motion for summary judgment. An appropriate writ of habeas corpus shall issue to respondents Lane and Duckworth, directing them to release Holleman from custody only insofar as his custody is pursuant to the judgment of the Circuit Court of Cook County, Illinois, in No. 77–3900, *People v. Holleman.* The writ shall not impair Holleman's incarceration pursuant to his Indiana conviction or his federal conviction.

It is so ordered.

## APPENDIX A

Analysis of time from Holleman's arrival in Illinois until his trial.

| Dates | Explanation | Days of accumulated delay not attributable to Holleman |
|---|---|---|
| 3/28 to 3/30 | No explanation in record. | 2 |
| 3/30 to 4/12 | Ambiguous; motion of State or motion by defendant. (Half-sheet, pp. 1, 2.)[1] | --- |
| 4/12 to 4/20 | Order of court. (Half-sheet, p. 1.)[2] | --- |
| 4/20 to 4/21 | Defendant's motion. (Half-sheet, p. 1.)[3] | --- |
| 4/21 to 5/15 | Order of court; trial demand by defendant. (Half-sheet p. 1; tr. p. 58.) | 26 |
| 5/15 to 5/31 | By agreement. (Half-sheet, p. 1.) | --- |
| 5/31 to 6/16 | By agreement. (Half-sheet, p. 1.) | --- |
| 6/16 to 7/18 | By agreement. (Half-sheet, p. 1.) | --- |
| 7/18 to 7/27 | By agreement. (Half-sheet, p. 1.) | --- |
| 7/27 to 8/16 | Order of court; trial demand by defendant. (Half-sheet, p. 2; tr. pp. 57–58.) | 46 |
| 8/16 to 8/29 | Motion of State; trial demand by defendant. (Half-sheet p. 1; tr. pp. 57–58.) | 59 |
| 8/29 to 9/13 | Motion of State; trial demand by defendant. (Half-sheet, p. 1; tr. pp. 57–58.) | 74 |
| 9/13 to 10/2 | Motion of State; trial demand by defendant. (Half-sheet p. 1; tr. pp. 57–58.) | 93 |
| 10/1 to 10/10 | Order of court; trial demand by defendant. (Half-sheet p. 1; tr. pp. 57–58.) | 101 |
| 10/10 to 10/18 | Motion of State; trial demand by defendant. (Half-sheet p. 1; tr. pp. 57–58.) | 109 |
| 10/18 to 10/30 | Motion of State; trial demand by defendant. (Half-sheet p. 1; tr. pp. 57–58.) | 121 |

1. Because Holleman moves for summary judgment, the court resolves this ambiguity against him and assumes the continuance was granted on his motion.

2. Holleman was arraigned on April 12. Holleman apparently concedes that the continuance from that date to April 20 was for good cause, since he does not include those eight days in his computation of accumulated delay. (Holleman brief filed 4/25/84, pp. 3–4.

3. According to the half-sheet, on April 20 the court ordered a continuance, on Holleman's motion, to *May* 21. The next entry is *April* 21, however, on which date the court ordered a continuance to May 15 on its own motion. The court assumes that the April 20 entry is in error and should reflect a one-day continuance to April 21. The State has stipulated that Holleman demanded trial on April 21. (Tr. p. 58.)

| Dates | Explanation | Days of accumulated delay not attributable to Holleman |
|---|---|---|
| 10/30 to 11/6 | Motion of State; trial demand by defendant. (Half-sheet p. 3; tr. pp. 57–58.)[4] | 128 |

## APPENDIX B

### IN THE TRIAL COURT

That the defendant was not brought to trial within 120 days as required by Article IV of the Uniform Agreement on Detainers ILL.REV.STAT, 1977, Chapter 38, Section 1003–8–9. (Motion to dismiss, marked C22 in record, ¶ 7.)

That the State cannot avoid the defendant's statutory right to a speedy trial by deliberately failing to exercise the State's ability to transfer the defendant to Illinois thereby attempting to avoid the dictates of Article IV of the Uniform Agreement. (Motion to dismiss, C22, ¶ 9.)

That the defendant has been in custody a total of 142 days where delay was not occasioned by the defendant without being tried on the indictment in violation of [the Illinois Speedy Trial Act]. (Motion to dismiss, C30, ¶ 14.)

MR. NEVILLE [Holleman's trial counsel]: The situation is clearly this, Judge. There is a statute, 103–5 which your Honor is familiar with. It is our contention that this defendant should be treated under the most recent paragraph of 103–5 which is Paragraph F which changed the law in this state making a delay by the defendant only temporarily interrupted or temporarily suspend the one hundred twenty day time limit.

It's clear from the dates in the motion that if my contention is correct you are over one hundred twenty days. If my contention is incorrect, under one hundred twenty days. (Tr. p. 7.)

MR. NEVILLE: ... in that motion to dismiss I alleged three different reasons why the indictment should be dismissed.... And thirdly, violation under the Uniform Detainer Act, too much time in bringing this defendant to trial.

Now, the act again says, under article 4, paragraph or subparagraph 3, in respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state but for good cause show in open Court prisoner or his counsel being present, the Court having jurisdiction on the matter may grant a necessary continuance. (Tr. pp. 18–19.)

MR. NEVILLE: ... I think that's a violation of the Speedy Trial Right. I think it's a violation of the Uniform Detainer Act and specifically Paragraph C of Article 4, to allow the defendant to remain in Indiana when there has already been an offer to transport him under the Act. And that would be the argument with respect to that.

MR. CAREY [Assistant State's Attorney]: Your Honor, in response, if I might call the Court's attention specifically to Paragraph C, under Article 4, we are talking about a proceeding that is initiated by the State. Your Honor, it says that the trial shall be commenced within one hundred twenty days of the arrival of the prisoner. (Tr. pp. 21–22.)

MR. CAREY: The whole point of the argument is that the one hundred and twenty days begins to run from the time in which the defendant is in the receiving state. (Tr. p. 25.)

MR. NEVILLE: ... My argument centers around the fact that the state circumvented the one hundred twenty day rule,

4. Holleman properly includes November 6, 1978, the day of his trial, in his computation. Art. IV(c) requires that trial commence within 120 days, rather than permitting 120 days to elapse before trial.

circumvented that by leaving him in Indiana.

I know the statute says the one hundred twenty days starts to run when he gets here, but if you never bring him here and you leave him there, you prejudice the defendant.

THE COURT: There are several cases in Illinois where the State tried to use maneuvers in good faith or bad, I don't know, but tried to use maneuvers where they could avoid the one hundred twenty day rule, dismissal at the one hundred and eighteenth day and then indicting down the road. (Tr. p. 27.)

THE COURT: ... I don't think I can impose the one hundred twenty day rule [with respect to delay before the defendant arrived in Illinois] and ... I have already ruled on any delays from the time that he came here. (Tr. p. 38.)

That the Court erred in its ruling with respect to the violation of the defendant's rights under the Uniform Agreement on Detainers Act (Ill.Rev.Stat., Chap. 38, Section 1003–8–9). (Motion for new trial, ¶ 8.)

MR. NEVILLE: I think with those two stipulations, Judge, it becomes apparent that more than 120 days passed and it was the ruling of this Court that the prior dates did not apply, but I think the record is now clear and the stipulation will preserve the record. (Tr. pp. 58–59.)

**IN THE APPELLATE COURT**

The statute in question was an amendment to the Illinois speedy-trial statute changing the method of computing the length of delay to determine denial of a statutory speedy trial. Rather than requiring 120 days of continuous delay before denial of a speedy trial as under the old law ... the amendment permitted the accumulation of delay by which to determine denial of a speedy trial. (Holleman brief, p. 14.)

The extent of these delays not caused by defendant thus totalled a figure of 128 days. This 128 day period here clearly exceeds the 120 days permitted by the State for trial under the statute for those, like defendant, remaining in custody await-

ing their trial. (Holleman brief, p. 20; footnote omitted.)

In a separate motion to dismiss the indictment ... counsel alleged denial of a speedy trial occurred as provided in the interstate Agreement on Detainers. (Ill. Rev.Stat., ch. 38, par. 1003–8–9 (1977).) At the hearing he contended that, while the trial term under Article IV(c) of that Agreement ... is directed to begin from the time "of the arrival of the prisoner in the receiving state", the State here "circumvented" this limitation by failing to adequately act to assure defendant's swift return for trial. (Holleman brief, p. 20.)

Strict construction of the 120 days permitted for trial following defendant's return as precluding relief for delays such as here prior to return would mean "this law has wax teeth and is little more than a legislative exercise in futility." ... Such cannot be allowed to happen and, for the delays here, defendant must be said to have been denied a speedy trial as contemplated by the Agreement on Detainers. (Holleman brief, p. 24.)

In its response, the State apparently does not contest the accumulation of delay surpassed 120 days but it does dispute the applicability of the amendment. (Holleman reply, p. 2.)

**THE OPINION OF THE APPELLATE COURT**

The motion based upon section 103–5 alleged a total accumulated pre-trial delay of 142 days not occasioned by defendant during which he was in custody. (82 Ill. App.3d at 411, 37 Ill.Dec. at 784, 402 N.E.2d at 786.)

Defendant maintains in this regard and the State does not contest that: after he was delivered into the custody of Illinois authorities on March 28, 1978, delays were occasioned by him from April 12 to April 21; continuances by agreement were granted from May 15 to July 27; the time that elapsed between the last agreed continuance and the trial on November 6, 1978 was 102 days; and the total accumulated time of delays not caused by defendant was 128

days. (*Id.* at 413, 37 Ill.Dec. at 785–86, 402 N.E.2d at 787–88.)

Defendant alternatively contends that he was denied a speedy trial as contemplated by the relevant provisions of Article IV of the Uniform Agreement (Ill.Rev.Stat.1977, ch. 38, par. 1003–8–9, art. IV(a), (c) which authorize the appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state be made available for trial in the receiving state, the trial to commence 120 days of the arrival of the prisoner in the receiving state [sic]. Dismissal of the indictment is prescribed for noncompliance by the receiving state with the aforesaid 120 day time limitation for commencement of trial (Ill.Rev.Stat. 1977, ch. 38, par. 1003–8–9, art. V(c)). Acknowledging that under the terms of Article IV this limitation generally runs from the date of a prisoner's arrival in the receiving state, defendant maintains that the State here circumvented its intended effect by failing to adequately assure his swift return for trial. (*Id.* at 414–15, 37 Ill.Dec. at 786, 402 N.E.2d at 788.)