**UNITED STATES ex rel. Robert HOLLEMAN, Petitioner,**

v.

**Jack DUCKWORTH, et al., Respondents.**

**No. 82 C 5666.**

United States District Court, N.D. Illinois, E.D.

June 26, 1986.

As corrected Dec. 24, 1986.

Supplemental Opinion Dec. 30, 1986.

---

Ronald Wilder, Brian A. Hamer, Schiff Hardin & Waite, Chicago, Ill., for petitioner.

Mark Rotert, James Fitzgerald, Michael Weinstein, Neil F. Hartigan, Office of Atty. Gen., Chicago, Ill., Linley Pearson, Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Petitioner Robert L. Holleman has applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 31, 1984, this court ruled that the State of Illinois violated Article IV(c) of the Interstate Agreement on Detainers, Ill.Rev.Stat. ch. 38, ¶ 1003–8–9(a) (the "IAD"), a law of the United States for habeas corpus purposes, and therefore ordered that a writ of habeas corpus issue. *United States ex rel. Holleman v. Duckworth*, 592 F.Supp. 1423 (N.D. Ill.1984).

The Court of Appeals for the Seventh Circuit reversed this court, finding that Holleman had waived his IAD claim by failing to raise it before the Illinois Appellate Court. *United States ex rel. Holleman v. Duckworth*, 770 F.2d 690 (7th Cir. 1985), *cert. denied*, — U.S. —, 106 S.Ct. 828, 88 L.Ed.2d 800 (1986). The Court of Appeals then remanded this case and directed this court to consider whether Holleman can "show cause for and prejudice from the procedural default." *Id.* at 692. Before the court currently is Holleman's motion for summary judgment. Because the record before the court reveals that there are no genuine issues of material fact, and that there was cause for and prejudice from the defaulted or "waived" IAD claim, the court grants Holleman's motion and issues the writ.

### Background of the Case

Holleman was indicted by an Illinois grand jury for murder on July 26, 1977. Because he was incarcerated in Indiana at the time (pursuant to previous Indiana and federal convictions), Illinois authorities lodged a detainer against him pursuant to the IAD. In response, the State of Indiana offered Illinois custody of Holleman on November 25, 1977.

Despite this offer, however, the Illinois authorities did not actually transfer Holleman to Illinois until March 28, 1978. Thus, he remained in the Indiana prison for a total of 123 days after Indiana offered Illi-

nois custody and 245 days after he was indicted. After Holleman was transferred to Illinois, his trial was postponed for yet another seven months. Holleman's trial on the Illinois charges did not begin until November 6, 1978, and both parties agree that, after excluding excusable delays under the IAD, Holleman was brought to trial on the 128th day after Illinois authorities took custody. The IAD states that the trial of a transferred prisoner "shall be commenced within 120 days of the arrival of the prisoner in the receiving state" after deducting time exclusions for excusable delays. Ill.Rev.Stat. ch. 38, § 1003–8–9(a), Art. IV(c). Violations of Article IV(c)'s 120–day provision require dismissal with prejudice of the indictment. *Id.* at Article V(c).

In the state trial court, Holleman argued that the charges should be dismissed because he "was not brought to trial within the 120 days as required by Article IV of the Uniform Agreement on Detainers." He also argued that Illinois had violated the Speedy Trial Act, Ill.Rev.Stat. ch. 38, § 103–5(a), because more than 120 days elapsed between his arrival in Illinois and his trial. Finally, he argued that Illinois circumvented (and thus violated) the 120–day limit of Article IV(c) by its 123–day delay in accepting custody of Holleman. The state trial court rejected all these arguments, found him guilty, and sentenced him to twenty years in prison.

On appeal to the Illinois Appellate Court, petitioner raised only two issues: whether Illinois violated the Speedy Trial Act and whether the state circumvented (and thus violated) the IAD by not accepting custody of Holleman as soon as Indiana offered it. Holleman did not argue that because he was not brought to trial within 120 days of his transfer from Indiana to Illinois, his conviction violated Article IV(c) of the IDA. (It is this claim which, when previously raised in this court, was the basis for this court's original decision to grant Holleman's petition for the writ of habeas corpus.) The Illinois Appellate Court affirmed the trial court conviction, *People v. Holle-*

*man,* 82 Ill.App.3d 409, 37 Ill.Dec. 782, 402 N.E.2d 784 (1st Dist. 1980), and the Illinois Supreme Court denied Holleman's petition for leave to appeal.

■ If a state prisoner fails to raise a claim in his state court appeal, he may base a habeas corpus action on that claim only by showing "cause" for the failure and "prejudice" resulting from it. *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 361 (7th Cir.1983). When this case was originally before this court on Holleman's petition for habeas relief, one of the questions then presented was whether the Illinois Appellate Court was effectively presented with the Article IV(c) speedy trial claim, even though Holleman did not argue it in precise and explicit terms. There was no question that Holleman had in fact raised the claim of the Illinois Speedy Trial Act violation (which was rejected). There was also no question that Holleman had raised a claim of an Article IV(c) violation, but only insofar as he claimed Article IV(c) was violated by Illinois' failure to accept custody of Holleman as soon as Indiana offered it. Thus, the question this court faced was whether those claims were "close enough" to the additional claim that Article IV(c) was violated for failure to try Holleman within 120 days of his arrival in Illinois so that a federal court should deem that claim to have been effectively "raised" in the state court. This court answered that question in the affirmative, analogizing the facts of this case to *United States v. Mauro,* 436 U.S. 340, 364–65, 98 S.Ct. 1834, 1849–50, 56 L.Ed.2d 329 (1978). The Seventh Circuit disagreed, and therefore reversed this court.

The Court of Appeals felt that the question of whether a particular federal claim has been presented to a state appellate court is a matter of state law. *See Holleman,* 770 F.2d at 692 n. 2. Specifically, the Court observed that Illinois law requires "an appellant to list in his brief the issues and arguments raised on appeal, [and] Holleman neither listed the post-transfer IAD issue nor specifically argued it." *Id.*

at 692 (citing to Ill.Rev.Stat. ch. 110A, § 341(e)(7)). With due respect, this court believes that under prior Supreme Court and Seventh Circuit law, the question of whether a state court has been notified of a particular federal claim is a matter of federal, not state, law. *See Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Conner,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Humphrey v. Cady,* 405 U.S. 504, 517 n. 18, 92 S.Ct. 1048, 1056 n. 18, 31 L.Ed.2d 394 (1972); *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 454 (7th Cir.1984). Since it is federal law which holds that a federal claim not presented to the state courts is barred from consideration on federal habeas review (absent cause and prejudice), federal law should also determine when in fact a federal claim has or has not been so presented. Under the federal rule, a particular federal claim is deemed to have been presented to the state court if the petitioner has provided the state with a "fair opportunity" to apply the controlling federal legal principles to the facts bearing on his claim. *See Anderson, supra; Picard, supra.* Under this rule, which appears to be more lenient than Illinois law, Holleman might be deemed to have presented his post-transfer IAD claim to the state court. In any event, this court questions the utilization of state law for determining whether Holleman had effectively presented his post-transfer IAD claim to the state appellate court. Nevertheless, such is the Seventh Circuit's ruling in this particular case and this court is of course bound to follow the Court's mandate.

Accordingly, this court must consider Holleman to have waived his Article IV(c) speedy trial claim unless he can demonstrate sufficient "cause" for and "prejudice" from the waiver, as required by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Because of the nature of this case, the court addresses the "cause" and "prejudice" questions in reverse order.

## Legal Discussion

### 1. *The Existence of Prejudice.*

■ The prejudice Holleman has experienced as a result of his state appellate counsel's failure to raise the Article IV claim can hardly be questioned, and indeed the state does not question it. In its original opinion in this case, this court concluded that the state violated the speedy trial provision of Article IV(c) and that this violation required automatic dismissal with prejudice of Holleman's indictment. Thus, but for counsel's failure to call to the appellate court's attention the substantial error of trying Holleman on an indictment which, under the conceded facts and Article IV(c), must be dismissed, Holleman's indictment would have been dismissed—at least the state recognizes this is what the court would have legally been required to do. *See Holleman*, 592 F.Supp. at 1426. The subsequent affirmance of Holleman's conviction, then, easily constitutes "prejudice" as expressed by the Supreme Court and the Seventh Circuit. *See Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984) (defect resulting in a conviction when defendant "might not have been convicted" constitutes actual prejudice); *Phillips v. Lane*, 787 F.2d 208, 215 (7th Cir. 1986) (prejudice means an error that "probably changed the outcome"). Here, not only did the counsel's failure "probably" cause a conviction that "might not" otherwise have occurred, it is legally certain and admitted that the conceded delay in this case entitled Holleman to a dismissal of the Illinois indictment. The court therefore holds that Holleman has been "prejudiced" by his appellate counsel's failure to raise the Article IV(c) speedy trial claim on appeal. Accordingly, the court now turns to the question of whether "cause" exists to excuse Holleman for this prejudicial failure.

### 2. *The Existence of Cause.*

The Supreme Court "has deliberately refrained" from precisely defining the cause requirement, *Huffman v. Wainwright*, 651 F.2d 347, 351 (5th Cir.1981), recognizing "the broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur." *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). As the Court stated in *Engle v. Isaacs*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982):

> The terms "cause" and "actual prejudice" are not rigid concepts; they take their meaning from the principles of comity and finality discussed above. In appropriate cases those principles must yield to the imperative of a fundamentally unjust incarceration. Since we are confident that victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard, see *Wainwright v. Sykes, supra*, 433 U.S. at 91 [97 S.Ct. at 2508]; *id.* at 94–97 [97 S.Ct. at 2510–2512] (Stevens, J., concurring), we decline to adopt the more vague inquiry suggested by the words "plain error."

The concurring opinion of Justice Stevens, referred to in *Isaacs*, includes the following guidance:

> Matters such as the competence of counsel, the procedural context in which the asserted waiver occurred, the character of the constitutional right at stake, and the overall fairness of the entire proceeding, may be more significant than the language of the test the Court purports to apply. I therefore believe the court has wisely refrained from attempting to give precise content to its "cause"-and-"prejudice" exception to the rule of *Francis v. Henderson*, 425 U.S. 536 [96 S.Ct. 1708, 48 L.Ed.2d 149 (1976)]....

*Sykes*, 433 U.S. at 95–96, 97 S.Ct. at 2511.

The Seventh Circuit has attempted to flesh out the meaning of the "cause" requirement, particularly with regard to the question of whether ineffective legal assistance may constitute sufficient cause to excuse a procedural default. In *Clay v. Director, Juvenile Division, Department of Corrections*, 749 F.2d 427, 430–31 (7th Cir. 1984), *cert. denied*, 471 U.S. 1108, 105 S.Ct.

2344, 85 L.Ed.2d 858 (1985), the Court explicitly held that "[i]neffective assistance of counsel may provide sufficient cause for a procedural default." In so holding, the Court cited to several earlier cases from within and without this circuit, including *Gray v. Greer*, 707 F.2d 965, 969 n. 5 (7th Cir.1983), and *Norris v. United States*, 687 F.2d 899, 903 (7th Cir.1982).

An important question commented upon in *Clay* was whether a habeas petitioner must establish that his appellate counsel was so ineffective that the ineffectiveness amounted to a violation of the petitioner's sixth amendment right to counsel, or alternatively, whether a lesser showing of ineffectiveness would be sufficient. The Court's words on this are significant:

> Most courts that have addressed the issue have held that habeas petitioners are not necessarily required to establish a violation of their sixth amendment right to effective assistance of counsel to satisfy cause for a procedural default under *Wainwright v. Sykes, supra.* The courts generally have drawn a distinction between counsel's tactical decisions and ignorance or oversight. If the failure to object or appeal was a tactical decision by counsel, the petitioner is required to prove that counsel's representation violated the sixth amendment. If the failure was due to counsel's ignorance or oversight, a lesser showing of incompetency is required. *See Carrier v. Hutto,* 724 F.2d 396, 401 (4th Cir.1983); *Runnels v. Hess,* 653 F.2d 1359, 1364 (10th Cir.1981); *Garrison v. McCarthy,* 653 F.2d 374, 378 (9th Cir.1981); *cf. Jurek v. Estell,* 593 F.2d 672, 683 n. 19 (5th Cir. 1979) ("Of course, [attorney] misfeasance need not amount to a denial of the defendant's constitutional right to counsel; if it did it would be an independently sufficient reason to grant relief and would make it immaterial whether other constitutional claims had been forfeited."), vacated on other grounds, 623 F.2d 929 (5th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

*Clay,* 749 F.2d at 433 n. 4. After making these observations, the Court declined to rule in that case on whether it would join the view of the law that these other circuits had adopted. *Id.* Nevertheless, the extended discussion the Court gave to this issue at least suggests that it was sympathetic to the view that an attorney's "ignorance or inadvertence" in causing a procedural default, may constitute cause even when that ignorance does not fully rise to the level of a sixth amendment violation.

In *Gray v. Greer,* 778 F.2d 350 (7th Cir.1985), another panel of the Court was squarely confronted with this issue. The Court unequivocally held:

> When a claim of ineffective assistance of counsel is advanced only to satisfy the cause requirement of *Wainwright,* however, counsel need not have been so ineffective as to violate the constitution. *See Clay v. Director Juvenile Div. Dept. of Corr.* 749 F.2d 427, 433 n. 4 (7th Cir. 1984). To show cause for failure to raise an issue on direct appeal, petitioner need only show that such failure resulted from the ignorance or inadvertence of appellate counsel.

778 F.2d at 353–54. Thus, when faced with the issue, the Seventh Circuit approved the view that ignorance or inadvertence not fully rising to the level of a sixth amendment violation is "cause" excusing a procedural default.

In this case, the state has suggested that this court should decline to follow *Gray* because the Illinois Attorney General requested and received a stay of the mandate in *Gray,* and further, on April 3, 1986, the Attorney General filed a petition for a writ of certiorari with the United States Supreme Court in an effort to get *Gray* reversed. The state provides this court with no authority for the proposition that the stay renders the *Gray* opinion without legal effect. In fact, such is not the law. *See Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 189, 61 S.Ct. 513, 515, 85 L.Ed. 725 (1941) ("in the federal courts the general rule has long been recognized that while appeal with proper

supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality"); *cf. Sternberg v. St. Louis Union Trust Co.,* 66 F.Supp. 16 (E.D.Mo.1946) (stayed judgment is still entitled to res judicata effect), *aff'd on other grounds,* 163 F.2d 714 (8th Cir.), *cert. denied,* 332 U.S. 843, 68 S.Ct. 267, 92 L.Ed. 414 (1947). Thus, under *Huron,* in the absence of an outright reversal by the Supreme Court, or similarly a vacation of the *Gray* opinion by the Seventh Circuit itself, neither of which has occurred, the holding of *Gray* must be considered binding on this court. In any event, the *Gray* holding with respect to the "ignorance or inadvertence" standard is not new. As just discussed, the Court has hinted before *Gray* that it felt ignorance or inadvertence not quite rising to the level of a sixth amendment violation can constitute "cause." But since *Gray* is entitled to legal effect, this court should follow the "ignorance or inadvertence" standard adopted in the *Gray* opinion.[1]

Before turning to the question of whether "ignorance or inadvertence" not at the level of a sixth amendment violation is present in this case, thus establishing "cause," the court notes one further important feature of the "cause" definition. Elsewhere in the *Clay* opinion, the Seventh Circuit adopted the view, embraced in two other circuits, that where "prejudice is high, cause will be more easily found. Conversely, where it appears that justice has been done, the requirement for showing both cause and prejudice will be strictly enforced." *Clay,* 749 F.2d at 434. With these principles in mind, the court now examines the facts presented here and concludes that "cause" for Holleman's procedural default has indeed been shown.

As this court has once before stated, Holleman's failure to present his Article IV(c) speedy trial claim to the Illinois Appellate Court was "inexplicable." *Holleman,* 592 F.Supp. at 1429. In clear and straightforward terms, Article IV(c) prohibits any party to the IAD from trying a defendant more than 120 days after his arrival in a receiving state. In similarly plain language, Article V requires dismissal with prejudice of the indictment for which the defendant is to be tried when Article IV(c) has been violated. The appellate record in this case indicates that Holleman's counsel knew of the existence of the facts which would have enabled Holleman to achieve dismissal of his indictment. Holleman argued extensively, and it was conceded on all sides, that more than 120 days of delay had passed since his arrival in Illinois. Unfortunately, Holleman's counsel argued these facts only in terms of a violation of the Illinos Speedy Trial Act, rather than the IAD. (The court then re-

---

1. The state further argues that this court should not follow the "ignorance or inadvertence" standard of *Gray* for the additional reason that it has been rejected in another circuit. Specifically, in *Indiviglio v. United States,* 612 F.2d 624, 631 (2d Cir.1979), *cert. denied,* 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980), the Second Circuit held that a counsel's error had to be so egregious as to amount to a sixth amendment violation before "cause" would be established. *Indiviglio* was then followed in *Tsirizotakis v. LeFevre,* 736 F.2d 57, 62 (2d Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984). Aside from the fact that *Indiviglio* was decided in another circuit, there is a good reason this court should not follow its holding. In *Indiviglio,* the petitioner brought his claim under 28 U.S.C. § 2255, the remedy for release from unlawful confinement ordered by a federal, not state, court. A section 2255 petitioner, unlike a section 2254 counterpart like Holleman, has already been afforded a hearing on his federal claim in a federal forum prior to his confinement in prison. Federal courts, it may reasonably be assumed, are more familiar with and therefore more readily solicitous of federal claims than are state courts. Accordingly, a federal court may be able to recognize a federal issue that a constitutionally competent lawyer has inadvertently neglected to raise, where a state court might not be so able. However, even a federal court will be unable to recognize unraised federal contentions when a lawyer is so delinquent in his presentation of a case as to be constitutionally incompetent. Therefore, it may not be unreasonable to require a section 2255 petitioner to show that his lawyer was constitutionally incompetent, as *Indiviglio* so required, before a default may be excused and the interest of finality may be upset. However, this requirement need not apply as stringently to a section 2254 petitioner who has not yet had a federal forum hear his case.

jected the argument that this sort of delay violated the Speedy Trial Act.) Yet, the record also indicates that Holleman's counsel knew of the legal provisions encapsulated in Article IV(c) of the IDA, requiring trial of a detainee within 120 days of his arrival in Illinois. This is because Holleman's second argument on appeal was that this 120–day speedy trial provision had been violated. However, this argument was limited only to the idea that Illinois should be deemed to have violated Article IV(c) because the Illinois authorities circumvented the 120–day limitation by their 123–day delay in accepting custody of Holleman after it was offered by the Indiana authorities. (The court rejected this argument too.) Thus, Holleman's counsel simply and inexplicably failed to take the somewhat elementary step of combining the facts of his first argument (more than 120 days had elapsed since Holleman's arrival in Illinois) with the law of his second argument (Article IV(c) requires defendant to be tried within 120 days of his arrival in the receiving jurisdiction). This failure is the very essence of inadvertence—not just simple inadvertence, but gross inadvertence coming close to a sixth amendment violation.

The court reaches this conclusion for two reasons. First, it is clear that nothing could possibly have been gained by a deliberate decision to withhold this argument from the appellate court, so there is no reason to construe Holleman's failure to present that argument on appeal as an intentional tactic or strategy. (Indeed, if the withholding were tactical, then under *Clay* Holleman would probably have to show that his lawyer's incompetence was

fully unconstitutional.) All parties here seem to agree that the Article IV(c) speedy trial claim, if presented to the appellate court, should have unarguably resulted in a dismissal of Holleman's indictment. Thus, there was everything to gain and nothing to lose from presenting this argument to the appellate court in addition to the two others which only might have resulted in a dismissal, and ultimately did not.

Second, the Article IV(c) speedy trial claim was a simple and obvious point to make once Holleman presented, as he did, his Illinois speedy trial claim and his Article IV(c) circumvention claim. Yet, Holleman did not make it on appeal. For years this court has been unable to understand how such an obvious, winning argument could have been overlooked, *see Holleman*, 592 F.Supp. at 1432 & n. 13, and to this date the parties themselves have not offered any explanation. Although it is not clear, the Article IV(c) speedy trial claim may even have been raised in the state trial court, see *id.*, and if this is the case, Holleman's failure to simply renew the argument before the appellate court further baffles the court. In any event, there is no question Holleman's failure to raise this dispositive claim on appeal, when both the conceded facts and the applicable law had already been presented in terms of the Illinois Speedy Trial Act and Article IV(c) circumvention claims, is a most gross oversight and inadvertence. The court therefore finds the inadvertence to be sufficiently gross as to come unacceptably close to, without actually reaching, a sixth amendment violation.[2]

**2.** The state argues that this court cannot grant summary judgment to Holleman without at least an affidavit from his state appellate counsel stating that the counsel's failure to raise the Article IV(c) speedy trial claim was an inadvertent error. The court sees no reason to go through the useless gesture of requiring a formal affidavit to that effect. The affidavit might be useful if there were some dispute as to the reasons for or causes of the counsel's failure to raise the claim. If the state, for example, were to plausibly suggest that counsel's failure was in some way strategic or deliberate, then there

would be a disputed fact the resolution of which might require a fuller record. However, the state does not even opine this, or any other alternative explanation, to the otherwise inevitable conclusion of sheer inadvertence for counsel's failure. Therefore, without a disputed fact, the only question for this court is the legal question of whether counsel's failure amounted to an inadvertence sufficiently gross to justify a finding of "cause." As explained in the text, the court concludes that the inadvertence here does amount to sufficient "cause" to excuse the procedural default.

Thus, it appears that Holleman has demonstrated "cause" for his procedural default—namely, his appellate counsel's gross inadvertence in failing to raise a distinct Article IV(c) speedy trial claim on appeal. The court can stand by this conclusion even if it believed that the inadvertence was not so gross as to come close to sixth amendment violation. This is because of the teaching of *Clay*, discussed earlier, that the "cause" requirement need not be so strictly enforced when prejudice is clear. In this case, prejudice is just that—clear. It is undisputed that under the facts of this case there is a violation of the speedy trial provision of Article IV(c) entitling Holleman to a dismissed indictment. Thus, even though Supreme Court cases like *Reed* and the Seventh Circuit cases like *Phillips* merely require that there be a high probability that a state error changed the outcome of the state proceeding, in this case all parties know that the error did change the outcome. In particular, it is a legal certainty that had the Article IV(c) claim been raised, Holleman's indictment would have been dismissed; instead, he was convicted. True, the sort of prejudice involved in this case does not reflect the most severe type of fundamental unfairness. For example, it is not claimed that Holleman is currently held in state prison for commission of a crime of which he is likely innocent. So, perhaps the "cause" requirement should not be too easily relaxed. Nevertheless, there is still certain prejudice, not just probable prejudice, since the IAD entitles Holleman to a dismissal of his indictment under the facts of this case. Therefore, the court alternatively holds that even if the inadvertence which led to Holleman's procedural default was not so gross as to come close to a sixth amendment violation, in a case like this where the prejudice is clear, this inadvertence is sufficient to justify a finding of "cause" for Holleman's default.

Having found there to be "cause," this court has now fulfilled the Court of Appeals mandate in this case and may therefore reach the merits of Holleman's IAD claim. The Court of Appeals did not disturb the conclusion on the merits that this court reached in its earlier opinion. Therefore, the court now reinstates that conclusion: the Article IV(c) speedy trial violation entitles Holleman to habeas corpus relief. Accordingly, the court grants Holleman's motion for summary judgment. An appropriate writ of habeas corpus shall issue to respondents Duckworth and the Attorney General of Illinois, directing them to release Holleman from custody only insofar as his custody is pursuant to the judgment of the Circuit Court of Cook County, Illinois, in No. 77–3900, *People v. Holleman.* The writ shall not impair Holleman's incarceration pursuant to his Indiana conviction or his federal conviction.

It is so ordered.

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

Petitioner Robert L. Holleman has applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 31, 1984, this court ruled that the State of Illinois violated Article IV(c) of the Interstate Agreement on Detainers, Ill.Rev.Stat. ch. 38, ¶ 1003–8–9(a) (the "IAD"), a law of the United States for habeas corpus purposes, and therefore ordered that a writ of habeas corpus issue. *United States ex rel. Holleman v. Duckworth,* 592 F.Supp. 1423 (N.D. Ill.1984).

The Court of Appeals for the Seventh Circuit reversed this court, finding that Holleman had waived his IAD claim by failing to raise it before the Illinois Appellate Court. *United States ex rel. Holleman v. Duckworth,* 770 F.2d 690 (7th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 828, 88 L.Ed.2d 800 (1986). The Court of Appeals then remanded this case and directed this court to consider whether Holleman can "show cause for and prejudice from the procedural default." *Id.* at 692. On June 26, 1986, this court held that Holleman had indeed demonstrated cause for and prejudice from the defaulted or "waived" IAD claim. Specifically, the court found that the failure of Holleman's

appellate counsel to raise the IAD argument before the appellate court amounted to such gross inadvertence as to come "close" to a sixth amendment violation and therefore constitute "cause." *United States ex rel. Holleman v. Duckworth, supra* at 88–89. The court relied on the Seventh Circuit rule, announced in *Gray v. Greer,* 778 F.2d 350 (7th Cir.1985), that when a claim of ineffective assistance of counsel is advanced only to satisfy the cause requirement, counsel need not have been so ineffective as to actually violate the sixth amendment of the constitution. A petitioner need only show that the default resulted from the "ignorance or inadvertence" of appellate counsel. 778 F.2d at 353–54. Thus, since this court concluded that "cause" for the defaulted IAD claim was present here, and since Holleman easily demonstrated prejudice, *Holleman v. Duckworth, supra,* at 86, this court reissued the writ, *id.* at 90.

On the same day that this court reissued the writ, the United States Supreme Court decided *Murray v. Carrier,* — U.S. —, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In that decision, the Court unequivocally held that "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Id.* 106 S.Ct. at 2648. This holding necessarily and directly overturned the contrary legal holding of *Gray v. Greer* and of this court's June 26 opinion. (See *Greer v. Gray,* — U.S. —, 106 S.Ct. 3328, 92 L.Ed.2d 734 (1986), vacating *Gray v. Greer,* 778 F.2d 350 (7th Cir.1985), and remanding *Gray* for reconsideration in light of *Murray.*) In addition, the Supreme Court further held that "the exhaustion doctrine ... generally requires that a claim of ineffective assistance of counsel be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* 106 S.Ct. at 2646. Accordingly, on July 1, 1986, this court withdrew its judgment and directed the parties to address the relevance of *Murray* to the facts of this case.

Having carefully reviewed the briefs, the court is now persuaded that the writ of habeas corpus should not issue and this case should be dismissed without prejudice.

■ In order for this court to once again reissue the writ of habeas corpus, Holleman must, as the Seventh Circuit has instructed, demonstrate cause for his failure to raise the IAD claim. Under *Murray,* when cause is predicated on attorney error, that error must rise to the level of a sixth amendment violation. Furthermore, under *Murray,* since a claim of a sixth amendment violation is an independent source of federal habeas relief, such a claim must first be exhausted in state court even when the claim is advanced only to show cause. Since, in this case, that claim has not yet been presented to state court, exhaustion would seem to be required here. The Supreme Court in *Murray,* however, was careful to state that exhaustion of a sixth amendment claim is only "generally" required. The question, then, that this court must address before it can evaluate Holleman's sixth amendment claim is whether exhaustion of that claim is actually required in this particular case.

■ Holleman, of course, argues that it is not. He correctly observes that the exhaustion requirement is not jurisdictional but is only a matter of comity. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Rose v. Lundy,* 455 U.S. 509, 515–520, 102 S.Ct. 1198, 1201–1204, 71 L.Ed.2d 379 (1982). The most common situation in which exhaustion is not required is stated in the habeas statute itself. Exhaustion is not required when "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). Holleman contends that this exception applies here because relief under the Illinois Post-Conviction Act, Ill.Rev. Stat. ch. 38, ¶ 122–1 *et seq.,* the state remedy for legal errors in state court, is limited to "constitutional violations" which occur

"in the proceedings which resulted in ... conviction." *Id*, at ¶ 122–1. Violation of Holleman's sixth amendment rights, he points out, occurred entirely on appeal. Thus, he concludes, it would be fruitless to pursue relief under the Post-Conviction Act, as that Act would not recognize his constitutional claim.

■ Despite Holleman's argument, it is evident that the Illinois Post-Conviction remedy has been interpreted to extend to petitioner claims of inadequate representation of counsel *on direct appeal. See, e.g., United States ex rel. Clauser v. Shadid*, 677 F.2d 591, 593 (7th Cir.1982); *People v. Pannell*, 44 Ill.App.3d 885, 3 Ill.Dec. 646, 358 N.E.2d 1331 (3d Dist. 1977); *People v. Savage*, 8 Ill.App.3d 162, 289 N.E.2d 460 (2d Dist.1972) ("the incompetence of counsel, whether at the trial level or upon appeal, is a proper question for consideration in a post-conviction proceeding"). Thus, the Illinois Post-Conviction Act is indeed a viable process for adjudicating Holleman's claim of ineffective assistance of counsel on appeal.

Holleman next argues that it would be inequitable for this court to require him to return to state court to exhaust the ineffective assistance claim after four years of federal litigation, three district court opinions, and more than a dozen legal briefs. Essentially, Holleman is arguing that the exhaustion rule announced in *Murray* should not be applied retroactively to a petitioner who completed his original state proceedings and filed a federal habeas petition four years before he could have been aware of his need to exhaust an ineffective assistance claim. Although the argument has some persuasive force at first blush, the court must conclude that the appeal for nonretroactivity is ultimately unavailing.

First, as a general principle, it is almost universally held that "[i]f a prisoner has exhausted his state remedy unsuccessfully, but there is an intervening Supreme Court decision that might induce the state courts to give relief, the prisoner will be required to apply again for relief from the state courts so that they may have the first opportunity to apply the new Supreme Court decision." 17 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4264, at 632–33 (1978); *see also Brown v. Lash*, 432 F.2d 1129 (7th Cir. 1970), *cert. denied*, 401 U.S. 948, 91 S.Ct. 926, 28 L.Ed.2d 231 (1971); *James v. Copinger*, 428 F.2d 235 (4th Cir.1970); *Brown v. New Jersey*, 395 F.2d 917 (3d Cir.1968); *United States ex rel. Walker v. Fogliani*, 343 F.2d 43 (9th Cir.1965); *Donnell v. Nash*, 323 F.2d 850 (8th Cir.1963), *cert. denied*, 376 U.S. 924, 84 S.Ct. 686, 11 L.Ed.2d 619 (1964). Presumably, this rule is meant to give the states another chance to correct a constitutional error in their criminal proceedings when the state could not have corrected the error the first time because the constitutional rights of defendants were not applicable to the defendants until the intervening Supreme Court decision.

It is not immediately clear that such a rule should apply in a case like this where the intervening Supreme Court decision did not apply additional constitutional rights to Holleman. Instead, *Murray* imposed a heightened obstacle on him by *limiting* claims of "cause" predicated on attorney error to claims of ineffective assistance of counsel. *Murray* then required him to test that new obstacle in state court first. Nevertheless, despite this possible difference, the *Murray* exhaustion rule should still be retroactively applied. The Supreme Court's treatment of the exhaustion requirement in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) compels this result. In *Rose*, the Court held that a habeas petition containing a mixture of exhausted federal claims and unexhausted federal claims had to be dismissed. The Court gave "a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Id.* at 520, 102 S.Ct. at 1204. Courts of Appeals, including this Circuit's, have uniformly held that the total exhaustion rule of *Rose* retroactively applies to already

pending habeas applications. *See United States ex rel. Clauser v. Shadid,* 677 F.2d 591 (7th Cir.1982); *Bowen v. State of Tennessee,* 698 F.2d 241, 242 (6th Cir.1983); *Gulliver v. Dalsheim,* 687 F.2d 655 (2d Cir.1982); *Guthrie v. Warden,* 683 F.2d 820 (4th Cir.1982); *Slotnick v. O'Lone,* 683 F.2d 60 (3d Cir.1982); *Steward v. Parratt,* 682 F.2d 757 (8th Cir.1982); *Smith v. Atkins,* 678 F.2d 883 (10th Cir.1982). The Supreme Court has even applied the *Rose* rule to a pending case and dismissed the entire petition where the lower court had already addressed the merits of the exhausted claim. *See Bergman v. Burton,* 456 U.S. 953, 102 S.Ct. 2026, 72 L.Ed.2d 478 (1982). In at least two other cases the court has applied *Rose* retroactively. *See Rodriquez v. Harris,* 455 U.S. 997, 102 S.Ct. 1627, 71 L.Ed.2d 858 (1982); *Duckworth v. Cowell,* 455 U.S. 996, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982).

*Rose v. Lundy* placed a heightened exhaustion burden on habeas petitioners by requiring that petitions not contain mixed claims. Nevertheless, courts including the Supreme Court and the Seventh Circuit, have not hesitated to apply that burden retroactively to pending cases. Similarly, the *Murray* decision places a heightened exhaustion burden on Holleman. When a claim of "cause" is predicated on attorney error, that error must amount to ineffective assistance of counsel, and that claim must itself be exhausted. Despite the pendency of this case, therefore, the values of comity and federalism as reflected in the retroactivity of *Rose* are sufficiently weighty to justify the retroactive application of the *Murray* exhaustion requirement.

It is important to note that requiring exhaustion in this case will impose no real prejudice on Holleman. Holleman is currently incarcerated in an Indiana prison pursuant to an Indiana judgment and a federal judgment. The writ sought in this case would relieve Holleman from his incarceration only as it relates to his Illinois criminal judgment. (His Illinois and Indiana sentences are concurrent.) Thus, this case does not involve a situation where a prisoner who may be entitled to immediate release but for the exhaustion rule must nevertheless languish in jail until the lofty principles of comity have been vindicated. Even if the writ issued, Holleman would still remain in prison. Thus, contrary to Holleman's plea for relaxing the exhaustion requirement, the lack of urgency in this case makes it especially appropriate for according the state its opportunity to correct any constitutional errors which may have taken place during Holleman's direct appeal.

Holleman's remedy now is to seek relief in the Illinois post-conviction courts. His claim, of course, is that his appellate counsel was so ineffective that Holleman's sixth amendment guarantee of effective assistance of counsel was violated. In this court's June 26 opinion, the court did *not* reach the question of whether the appellate counsel's assistance violated the sixth amendment. The court found it unnecessary to reach that issue because it felt that the less stringent (but now obsolete) "ignorance or inadvertence" standard of *Gray v. Greer,* 778 F.2d 350 (7th Cir.1985), was satisfied. True, this court did conclude that "the inadvertence [here was] sufficiently gross as to come unacceptably close to, without actually reaching, a sixth amendment violation." *Holleman v. Duckworth, supra,* slip op. at 15. But the "without actually reaching" phrase should not be taken literally. A more accurate phrase would have been "without necessarily reaching...." The June 26 opinion did not decide whether the appellate counsel's error actually rose to the level of a sixth amendment violation. First, that question would have required an analysis of the sixth amendment. However, none of the legal standards relevant to evaluating a sixth amendment claim were discussed in that opinion. Indeed, the leading Supreme Court case on the subject, *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052,

80 L.Ed.2d 674 (1984), was not cited even once in that opinion. Second, any incidental reference in the June opinion to the absence of a full sixth amendment violation was simply not necessary to the court's analysis and holding that the appellate counsel's errors were grossly inadvertent. The reference, therefore, is unauthoritative. Accordingly, the question of whether the appellate counsel's assistance actually violated the sixth amendment was and still is unresolved.

Clarification of what this court did and did not rule on is important because the respondents here have asked the court to dismiss this case with prejudice. Their argument is that since this court has already held there to be no sixth amendment violation, there is nothing left to exhaust. The absence of a sixth amendment violation, respondents contend, means that there can be no "cause" for Holleman's defaulted IAD claim, so the petition can be dismissed with prejudice. The court rejects this argument. First, as just discussed, the court has not yet decided the sixth amendment question. The respondents suggest, however, that they would not object to a ruling on the unexhausted sixth amendment claim (i.e., they would waive exhaustion), so long as the court ruled against Holleman on the merits of that claim. The court cannot accede to this request in light of the Seventh Circuit's recent opinion in *Gray v. Greer*, 800 F.2d 644 (7th Cir.1986), which might suggest the lawyer's error here was unconstitutional. As explained above, an earlier opinion in *Gray v. Greer*, 778 F.2d 350 (7th Cir.1985), the one which established the "ignorance or inadvertence" standard for "cause," was vacated by the Supreme Court for reconsideration in light of *Murray v. Carrier. See Greer v. Gray*, — U.S. —, 106 S.Ct. 3328, 92 L.Ed.2d 734 (1986). The 1986 *Gray* opinion modified the 1985 opinion by deleting all references to the "ignorance or inadvertence" rule. Significantly, though, the Court left completely undisturbed the clear guidelines it had set forth in its 1985 opinion for

determining when an appellate counsel's performance should be regarded as so deficient as to violate the sixth amendment. When "appellate counsel fail[s] to raise a significant and obvious issue, the failure could be viewed as deficient.... Significant issues which could have been raised should then be compared to those that were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray*, 800 F.2d at 646 (reproducing the language originally appearing at *Gray v. Greer*, 778 F.2d at 352). Without actually deciding the issue here, the court is persuaded that the facts of this case present a substantial sixth amendment question that could well be decided against the respondents. The proper course, therefore, is for this court to reserve judgment on the sixth amendment question and provide the state courts with the first opportunity to examine the question on post-conviction review.

■ In closing, the court addresses the one remaining argument Holleman advances in support of his petition for relief. Essentially, Holleman contends that he need not submit his sixth amendment claim to state court because the purpose of such a submission would only be to establish "cause" and "cause" need not be shown in certain extraordinary cases. This case, Holleman argues, is one such case.

It is true that in *Murray* the Supreme Court reaffirmed the principle that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 106 S.Ct. at 2650. Holleman suggests that a conviction like his, in violation of the IAD, rises to the same level as a conviction of "one who is actually innocent." The court simply cannot agree. Holleman's violated IAD rights were essentially speedy trial rights. Specifically, by failing to try him

within 120 days after his arrival in Illinois, Illinois violated Holleman's rights under Article IV(c) of the IAD. While such a violation offends a fundamental value in the fair administration of justice, and thus can serve as grounds for habeas relief, the violation simply does not raise doubts about the factual innocence or guilt of Holleman. What the court stated in the June 26 opinion bears repeating here: "[I]t is not claimed that Holleman is currently held in state prison for the commission of a crime of which he is likely innocent." *Holleman v. Duckworth, supra,* slip op. at 17. The Supreme Court's willingness to relax the exhaustion doctrine in "extraordinary" cases does not extend to all cases of fundamental errors, but rather only to those cases in which there has likely been an erroneous determination of guilt. This is not such a case. Accordingly, Holleman must show "cause" for his failure to raise his IAD claim in state court, and since his showing of "cause" depends on a claim, as yet unexhausted, that the sixth amendment was violated, Holleman must first present that constitutional claim to state court.

### Conclusion

The court amends its June 26 order as follows: Petitioner's motion for summary judgment is denied. The court dismisses petitioner's application for a writ of habeas corpus without prejudice for failure to exhaust the constitutional claim that petitioner was denied competent counsel on direct appeal in violation of the sixth amendment.

It is so ordered.